UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RAYMOND HAWKINS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LT. STORMS, ) <br> R. SCHILLING, ) <br> ) <br> Defendants. ) | No. 1:21-cv-01465-JMS-MPB |

**ORDER DENYING LT. STORMS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Raymond Hawkins, an inmate at the Correctional Industrial Facility in Pendleton, Indiana brought this lawsuit pursuant to 42 U.S.C. § 1983. As relevant here, Mr. Hawkins alleges that, while he was incarcerated at New Castle Correctional Facility ("New Castle"), Defendant Lieutenant Storms violated the Eighth Amendment by refusing to move Mr. Hawkins away from COVID-positive inmates who were housed near him. Dkts. 14, 23 (Screening Orders). Lieutenant Storms has moved for summary judgment arguing that Mr. Hawkins failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before he filed this lawsuit. For the following reasons, Lieutenant Storms' motion is **denied**.

**I.
LEGAL STANDARD**

A motion for summary judgment asks the Court to find that there is no genuine dispute as to any material fact and, instead, that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). Whether a party asserts that a fact is undisputed or genuinely disputed, the

party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). In deciding summary judgment, the Court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts." *Runkel v. City of Springfield*, __ F.4th __, 2022 WL 10357359, at *3 (7th Cir. Oct. 18, 2022).

## II.
## BACKGROUND

### A.  Offender Grievance Process

The Indiana Department of Correction ("IDOC") has a standardized grievance process. Dkt. 35-1 ¶ 4. The purpose of the grievance process is to provide prisoners committed to IDOC with a means of resolving concerns and complaints related to the conditions of their confinement. *Id.* Mr. Hawkins does not dispute that he was aware of the grievance process. *See generally* dkts. 44, 45.

During the period relevant to Mr. Hawkins's complaint, the grievance process consisted of three steps: (1) a formal attempt to solve a problem or concern following unsuccessful attempts at informal resolutions; (2) submitting a written appeal to the Warden or his designee; and (3) submitting a written appeal to the IDOC Grievance Manager. Dkt. 35-2 at 3. As to the first and

2

second steps, the process provides that the grievance specialist has 15 business days after a non-emergency grievance is recorded to respond to the grievance. *Id.* at 10–11. If the grievance specialist has not responded after 20 business days, the inmate may appeal as though the grievance has been denied. *Id.* at 11. In addition, after an inmate receives a response to a grievance, he has 5 business days to appeal. *Id.* at 12.

### B. Mr. Hawkins's Attempts to Exhaust

In this case, Mr. Hawkins is proceeding with a claim that, at some point after June 24, 2020, COVID-19-positive inmates were placed next to him. Mr. Hawkins asked Lieutenant Storms to move him to another range so he would not be exposed to COVID-19, and Lieutenant Storms refused, which resulted in Mr. Hawkins contracting COVID-19 and becoming sick. Dkt. 14 (Screening Order). With his summary-judgment response, Mr. Hawkins submitted an affidavit in which he states under penalty of perjury that he filed a grievance about the incident at issue in this lawsuit on September 17, 2020, by giving it to a law library supervisor. Dkt. 44-1 ¶¶ 3–6. He includes a copy of the grievance that he claims to have submitted on September 17, 2020. *Id.* at 8–9 ("September 17 Grievance"). In that grievance, he states:

> I would like to be tested for COVID-19 as soon as possible. And I would like to moved away from positive tested symptomatic offenders if I test negative like the CDC guidelines says. And I would also like to be fully & fairly compensated for the pain and suffering, physical damages and emotional stress that I've been put through for the deliberant actions of Warden Sevier, Lt. Storms & medical for placing positive & symptomatic offenders around me against CDC guidelines . . . .

3

> And once they did place positive & symptomatic infected offenders around me, they refused to test me for COVID-19.

*Id.* at 8 (errors in original). The September 17 Grievance appears to be identical to a grievance that he had attached to his amended complaint as Exhibit G-1. Dkt. 24-1 at 11–12.

In his summary-judgment affidavit, Mr. Hawkins also states:

> I wound up receiving an offender grievance response back from grievance specialist H. Winningham, with my name and D.O.C.# on it (grievance response #-117554). With grievance specialist and Cpt. Williams responding stating that there's no one around me that has tested positive for COVID-19, and that they're not allowed to have anyone who test positive for COVID-19 and are symptomatic, to be placed around anyone who's not per CDC guidelines and I.D.O.C. policy.

Dkt. 44-1 ¶ 7 (errors in original). Mr. Hawkins then states that he attempted to move to the next level of the grievance process (grievance appeal) by giving the law library supervisor his grievance response form to make copies. *Id.* ¶ 8. But, according to Mr. Hawkins, on October 22, 2020, he was written up and falsely accused of altering the offender grievance response that was sent to him by Ms. Winningham. *Id.* Because of the writeup, the grievance response was confiscated and is now in his confidential facility packet, which he is not allowed to access. *Id.* As a result, Mr. Hawkins states, he was not able to pursue his appeal. *Id.*

Lieutenant Storms disputes this version of events. With his summary-judgment motion, Lieutenant Storms submitted a declaration from Grievance Specialist Hannah Winningham, who states that she reviewed various records and found no record of any "filed, administered, or exhausted grievances" related to this lawsuit. Dkt. 57-1 ¶¶ 6, 10–15.

### III.
### DISCUSSION

Lieutenant Storms seeks summary judgment and argues that Mr. Hawkins failed to exhaust his available administrative remedies as required by the PLRA. The PLRA requires that a prisoner exhaust his available administrative remedies before bringing suit concerning prison conditions.

4

42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90–91 (2006) (footnote omitted); *see also Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) ("'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). Thus, "to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). That said, a prisoner need not exhaust remedies that are unavailable to him. *Ross v. Blake*, 578 U.S. 632, 642 (2016). A defendant bears the burden to establish that the administrative process was available. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

As the Court's factual summary shows, there are clearly disputes of fact as to whether Mr. Hawkins filed the September 17 Grievance and what happened after he filed that grievance. Because Mr. Hawkins is the non-moving party, the Court accepts for purposes of this Order that Mr. Hawkins filed the September 17 Grievance on September 17, 2020. It also accepts that Mr. Hawkins received a response to the September 17 Grievance and had that response confiscated before he was able to file a timely appeal.

Lieutenant Storms argues that these facts are not material because—even if Mr. Hawkins submitted the September 17 Grievance—it was unrelated to any allowed claim against Lieutenant Storms. Dkt. 34 at 4. In response, Mr. Hawkins rightly points out that the September 17 Grievance names Lieutenant Storms and complains about Lieutenant Storms making him live next to COVID-19-positive inmates, which is the subject of this lawsuit. Dkt. 45 at 5–6. Lieutenant Storms did not address this argument in his reply, thereby apparently abandoning his claim that the September 17 Grievance was unrelated to the claims in this lawsuit. Dkt. 46. Regardless, even if he did not abandon the claim, he bears the burden to show that Mr. Hawkins did not exhaust his administrative remedies, and he has failed to explain why the September 17 Grievance was insufficient to put him on notice that Mr. Hawkins was complaining about the conduct currently at issue in this lawsuit.

Lieutenant Storms also argues that these facts are not material because it is undisputed that Mr. Hawkins did not fully exhaust the grievance process. *Id.* at 4. But Mr. Hawkins claims that he could not appeal the denial of the September 17 Grievance because the grievance response was wrongfully confiscated—that is, he claims that the rest of the grievance process was unavailable to him. Lieutenant Storms bears the burden to show that the rest of the grievance process was available to Mr. Hawkins, *see Thomas*, 787 F.3d at 847, so for purposes of summary judgment he must establish that no reasonable fact-finder could find that the rest of the grievance process was unavailable to Mr. Hawkins. He has failed to do so.

Rather than confronting Mr. Hawkins's evidence and arguments about the unavailability of the grievance process head-on as required by the Entry Directing Development of Exhaustion Defense and Issuing Partial Stay, *see* dkt. 21 at 2 ("[I]f the plaintiff responds with evidence that the administrative remedy process was unavailable . . . , the defendant's reply must directly

6

confront the plaintiff's evidence regarding availability and explain why they remain entitled to summary judgment despite that evidence."), Lieutenant Storms contends that Mr. Hawkins has failed to raise a genuine issue of material fact as to the question of availability for three reasons: (1) Mr. Hawkins failed to explain why he did not appeal the grievance response he says he got from Ms. Winningham or how the confiscation of the grievance response prevented him from filing an appeal; (2) Mr. Hawkins failed to state the date when he tried to start an appeal of the grievance response, and any appeal attempt must have been untimely; and (3) Mr. Hawkins's original complaint said that he had a copy of the grievance response, which is inconsistent with his current position. Dkt. 46. None of these challenges is well taken.

      The first argument fails because it is not Mr. Hawkins's burden to prove that the rest grievance process was unavailable to him—it is Lieutenant Storms's burden to prove that it was available. Regardless, Mr. Hawkins *did* explain why he failed to appeal the grievance response, and the Court must accept that explanation as true for purposes of summary judgment. He specifically said that he could not appeal because the grievance response was wrongfully confiscated and thus made unavailable to him. The Seventh Circuit has held that a grievance process becomes unavailable "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809. If Lieutenant Storms contends that Mr. Hawkins could still have appealed the confiscated grievance response despite not having access to it, then he must explain how that could be accomplished. He has not done so. He mentions that the Court's original Screening Order suggests that Mr. Hawkins was able to grieve the write-up for falsifying documents and that Mr. Hawkins managed to exhaust other grievances after the October 2020 write-up, but those facts say nothing

about whether Mr. Hawkins was able to timely appeal the confiscated response to the September 17 Grievance, which is the heart of the issue here.

The second argument fails for similar reasons. Again, Lieutenant Storms is reversing the burden on the question of exhaustion. Mr. Hawkins is not required to prove that he attempted to appeal in a timely fashion. Instead, to obtain summary judgment, Lieutenant Storms must show that no reasonable fact-finder could find that Mr. Hawkins did attempt to timely appeal, thereby making the confiscation of the grievance response immaterial because the appeal would have been time-barred. Lieutenant Storms suggests that Mr. Hawkins's appeal attempt must have been untimely because appeals must be filed within 5 business days, and the allegedly falsified document was discovered on October 20, 2020—more than a month after the September 17 Grievance was filed. Dkt. 46 at 5. But the current record is silent as to when the September 17 Grievance was recorded and when Mr. Hawkins received a response to the September 17 Grievance; thus, it is impossible for the Court to calculate when his time to appeal began running and when it expired.

The third argument also fails. Lieutenant Storms is correct that Mr. Hawkins's original complaint stated that he had a copy of the response to the September 17 Grievance, but the complaint went on to say that the copy was "in his confidential classified packet," which is consistent with his position at summary judgment. Dkt. 1 at 7–8. Regardless, any conflict between Mr. Hawkins's unverified complaint and his summary-judgment affidavit raises a credibility issue that the Court cannot resolve at summary judgment. *Runkel*, 2022 WL 10357359, at *3.

In summary, there are genuine issues of material fact as to whether Mr. Hawkins timely grieved the conduct at issue in this lawsuit and whether the appeal process was available to him. Accordingly, Lieutenant Storms's motion for summary judgment must be denied.

## IV.
## CONCLUSION

For the reasons explained above, Lieutenant Storms' motion for summary judgment, dkt. [33], is **denied.**

Lieutenant Storms shall have through **November 14, 2022**, to inform the Court whether he wishes to withdraw his exhaustion defense or proceed to a *Pavey* hearing. The failure to respond by that deadline will be interpreted by the Court as a withdrawal of the exhaustion defense.

**IT IS SO ORDERED.**

Date: 10/24/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

RAYMOND HAWKINS
885871
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com

Joseph Thomas Lipps
BBFCS ATTORNEYS
jlipps@bbfcslaw.com

Sarah Jean Shores-Scisney
Stoll Keenon Ogden PLLC (SKO)
sarah.shores@skofirm.com